# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**PAULA JEAN STROPLE,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:14-cv-1962-Orl-37DAB**

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

## Procedural History

Plaintiff applied for benefits, alleging that she became unable to work on March 4, 2009 (R. 84, 180-81). The agency denied Plaintiff's applications initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). On July 19, 2013, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 16-29). The Appeals Council declined to grant review (R. 8-10), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint (Doc. 1), and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to pain and residuals from "osteoarthritis, depression, neck injuries; neck and shoulder injury;" and obesity (R. 226).

*Summary of Evidence Before the ALJ*

Plaintiff was 59 years old at the time of the ALJ's decision, with a high school education and past relevant work as an insurance sales agent, a travel agent, and a travel agency manager (R. 28, 42, 51-52, 218-22, 227).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from examining and non-examining state agency consultants. By way of summary, the ALJ determined that the claimant has the following severe impairments: disorders of the spine, disorders of the right shoulder, osteoarthritis, myofascial pain disorder, and obesity (20 CPR 404.1520(c)) (R. 21), but the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 24). The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform:

> less than sedentary work as defined in 20 CFR 404.1567(a). The claimant is capable of: occasionally lifting/carrying ten pounds; frequently lifting/carrying five pounds; standing or walking two hours of an eight hour workday; and sitting six hours of an eight hour workday. The claimant should avoid overhead lifting.

(R. 24).

Relying on the assistance of the Vocational Expert, the ALJ found Plaintiff was able to perform her past relevant work as an insurance sales agent, as she actually performed it (R. 28), and therefore, the ALJ found Plaintiff was not disabled (R. 29).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the Commissioner's decision was not formulated in accordance with proper standards and was not based upon substantial evidence. Specifically, Plaintiff argues that the ALJ failed to fully develop the record by not ordering a consultative examination; objects to the evaluation of the opinion evidence; and contends that the ALJ failed to properly consider medication side effects. The Court examines these issues in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). As the application was decided at step four, the burden remained with Plaintiff at all times.

*The duty to develop the record*

Plaintiff's first objection is to the ALJ's failure to order a consultative examination of Plaintiff's hands. During the administrative hearing, in response to a question from the ALJ regarding whether the medical record was complete, Plaintiff's attorney advised that he had requested updated records from the providers and had asked Plaintiff's doctor [Dr. McNish] "for labs" as "I understand the labs may show a positive RA factor,[1] so I am expecting that" (R. 40, *see also* R. 55). Counsel requested that a consultative examination be ordered, noting that Plaintiff "has auto-immune disease and she's currently on Methotrexate," and the trouble with her hands renders her "unable to utilize

---

[1] As pointed out by the Commissioner in her brief, RA factor or rheumatoid factor refers to a blood test that measures the amount of rheumatoid factor antibody in the blood, and is generally used to aid in diagnosing rheumatoid arthritis, although not all patients with abnormal results have rheumatoid arthritis. *See* Medline Plus, Rheumatoid Factor (RF) (visited August 10, 2015). http://www.nlm nih.gov/medlineplus/ency/article/003548.htm.

a computer" (R.41).  Upon questioning by the ALJ, Plaintiff said that she had not had any studies done on her hands "in years," but confirmed that she "test[s] postitive for RA" and had been taking Methotrexate "for about six months" (R. 53, 54).  When the ALJ noted that she did not see any RA findings or treatment in Plaintiff's records (R. 55, 58),  Plaintiff responded that she thought they were still waiting for that record, and counsel confirmed same. *Id.*  Based on counsel's representation that a test result showing positive RA findings and treatment was forthcoming, the ALJ stated that she thought that counsel's "recommendation to have some work done after the fact is a good idea. Unless [Plaintiff's doctor] has got something that is definitive," noting that she "would not want to spend the Agencies [sic] money if the RA factor is, you know, up there" (R. 58-59).  Counsel replied that he would "get that to you as soon as possible."  *Id.*  At the conclusion of the hearing, the following exchange occurred:

> ALJ: Mr. Swartz, the blood work has been done. So I'm not going to order the other testing yet.
> ATTY: Until we get McNish, right.
> ALJ: Get it, let me know.
> ATTY: Very good.
> ALJ: If it's -- if it's -- I mean, her [sed] weight is borderline heading into the high numbers. If the RA factor is up there also.
> ATTY: Is that a 12?
> ALJ: 13.
> \* \* \*
> ALJ: Yeah, no, we pretend to be a doctor, but we know we're not. So, if you'll let me -- if you'll   let me know, sir, when you've got that.
> ATTY: We already requested it, so we should have it forthwith.
> ALJ: Right, just --
> ATTY: How long ago was the lab work done?
> CLMT: Oh, I just had lab work done last month.
> ALJ: But she's got some going back eight months ago, correct?
> ATTY: Right.
> ALJ: And that's when they first did your
> CLMT: She has my lab work. I think I've had it done at least twice because once they put me on the Methotrexate.
> ALJ: Right.
> ATTY: Okay.
> CLMT: They do lab work every three months to make sure I [INAUDIBLE].

> ALJ: Of course, of course. But it's when she found the RA factor to put you on the Methotrexate would be eight months ago.
> CLMT: Approximately.
> ALJ: Yeah, so that's -- that's going to be the critical one.

(R. 70-71).

It is undisputed that the lab results submitted by counsel post-hearing did not contain any RA testing results (R. 501-503). Plaintiff contends that, "at this point, the ALJ should have ordered a consultative examination for evaluation of Ms. Strophe's hands as she had previously indicated at the administrative hearing" (Brief, p. 12).

The ALJ has the basic obligation to develop a full and fair record, even when, as here, a claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). This includes the responsibility to develop a claimant's medical history for the 12 months preceding the month in which the application was filed. *See* 20 C.F.R. §404.1512(d). That said, the ALJ is not required to act as counsel to develop a claimant's case. *Foreman v. Astrue*, No. 8:09cv932-T-24AEP; 2010 WL 3292810, at *5 (M.D. Fla. Aug. 3, 2010) (*citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir.1982). It is Plaintiff's burden to prove that she is disabled, and, consequently, she is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

It is plain that the ALJ's stated inclination to order a consultative examination of Plaintiff's hands was based on Plaintiff's testimony that she had RA and was being treated with Methotrexate for it, and counsel's representation that records confirming this had already been ordered and were forthcoming. However, as explained by the ALJ in her decision, "[a]lthough the claimant alleges a history of rheumatoid arthritis, there is no indication she has been diagnosed with this condition, nor is there evidence of a positive rheumatoid factor" (R. 28). Indeed, as the ALJ noted, despite Plaintiff's testimony that she was prescribed Methotrexate and had been taking it for six months, she

-6-

did not list this on her medication sheet completed in March of 2013, two months prior to the hearing (R. 25). The ALJ had no obligation to order an evaluation of an impairment that had not been shown to exist. *See* 20 C.F.R. § 404.1512(c).[2] No error for failing to develop the record is shown.[3]

*Evaluating Opinion Evidence*

Plaintiff's second contention is that the ALJ failed to apply the correct legal standards to the opinions of consultative psychologist J. Jeff Oatley, PhD., and provider, Dr. Youssef Guergues.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d

---

[2] The version of the regulation applicable at the time the administrative decision was issued provides: "Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. . . ." 20 C.F.R. §404.1512(c) (Feb. 23, 2012 - effective March 26, 2012 to June 11, 2014).

[3] Plaintiff's contention that there is "plenty of evidence showing hand limitations" misses the mark. An ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *See Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Here, as detailed in the ALJ's decision, the record contains numerous physical examination findings of no hand abnormalities, no grip deficits, no swelling, and full hand movement (R. 27-28). In addition, the ALJ noted the absence of any x rays showing arthritis in her hands, the lack of RA diagnosis or treatment, and Plaintiff's own testimony regarding her ability to lift 20 pounds and perform other activities with her hands. *Id.* The record is sufficient to support the decision not to credit Plaintiff's statements about hand limitations, and no additional examination was required. As Plaintiff has not established any 'evidentiary gaps' sufficient to establish that she suffered prejudice by the ALJ's decision not to order a consultative examination, remand is not warranted. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997).

580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). A consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight).

Dr. Oatley, a one time examiner, performed a psychological evaluation at the Commissioner's request (R. 454-456). As summarized by the ALJ:

> On October 12, 2011, the claimant presented to Jeff Oatley, Ph.D., for a consultative psychological evaluation on behalf of Disability Determination Services. She reported receiving psychopharmacological treatment from her primary care provider. The

>       claimant described panic episodes after being trapped in her car during a flood in El
>       Paso, Texas. As a result, she has problems in car washes and small enclosed spaces,
>       such as flying. The claimant also reported depression related to situational stressors
>       in her family. She stated she prepares meals with her husband's help. However, he
>       does all of the household chores. She explained she has no motivation or energy to do
>       household chores. The claimant's mood was sad and her self esteem appeared to be
>       low. She exhibited mild concentration difficulty. There were no severe memory
>       deficits. The claimant's attention span was fair and she was cooperative with a pleasant
>       attitude. Dr. Oatley diagnosed myofascial pain, specific phobia situational types, and
>       major depression. (Exhibit 9-F).

(R. 22).

Plaintiff contends that the ALJ failed to state what weight she gave this opinion in that she did not account for the opinion in any of her findings (Brief, p. 15). The ALJ made specific reference to Dr. Oatley's findings in concluding that Plaintiff's mental impairments were not severe, noting: "At the consultative examination, the claimant's memory was intact and she exhibited only mild limitations on her concentration" (R. 22). In finding that Plaintiff had only mild limitation in social functioning, the ALJ noted: "At the consultative examination, she was cooperative aud pleasan[t]." (R. 23). The ALJ also specifically cited and relied upon Dr. Oatley's findings as support for her finding that Plaintiff has mild limitations in concentration, persistence or pace. *Id.* ("At the consultative examination, the claimant's memory was intact and she demonstrated only mild concentration deficits." R. 23). While the ALJ did not explicitly state the weight given to Dr. Oatley's opinions, it is clear that she considered and, as shown, credited these findings. Together with the other evidence cited, substantial evidence supports the ALJ's findings that Plaintiff's mental impairments were not severe.[4] No error is shown.

As summarized by the ALJ in her decision, Dr. Guergues, a pain medicine specialist, evaluated Plaintiff during a December 2009 pain management consultation (R. 26, 496-98). Upon physical examination, Dr. Guergues noted no cervical spine deformity, normal range of motion in the cervical

---

[4] Indeed, Dr. Oatley did not opine that Plaintiff had disabling limitations, and listed her prognosis as "fair" (R. 456), noting Plaintiff's reported success in controlling her symptoms with medication (R. 455).

spine, normal grip strength bilaterally, moderate tenderness over the muscles of the back of the neck and lower cervical spine, and limited abduction of the right shoulder (R. 26, 497). Plaintiff exhibited normal muscle tone, 5/5 muscle strength, and was fully oriented (R. 497). Dr. Guergues prescribed Lortab and Neurontin, and scheduled steroid injections (R 26, 496). Dr. Guergues opined that driving was not recommended while on opiates and stated that Plaintiff could return to work with a limitation of no lifting more than five pounds (R. 26, 498).  As with Dr. Oatley, Plaintiff contends that the ALJ failed to state what weight she accorded this opinion and failed to explain how she accounted for this opinion in her findings (Brief, p. 16).

As noted, the ALJ did not ignore this opinion, but explicitly set forth the findings of Dr. Guergues, a one time examiner, including his finding, that, at that time, Plaintiff was restricted from lifting over five pounds, but could return to work (R. 26). The ALJ later referred to this opinion as being consistent with her RFC finding (R. 28).  Indeed, the ALJ's RFC finding limits Plaintiff to "less than sedentary work," with lifting limitations of five pounds frequently, and ten pounds occasionally (R. 24).  Thus, the ALJ considered and weighed this opinion, crediting it to the extent it was consistent with the RFC.

Plaintiff also complains that the ALJ erred in giving great weight to non-examining sources, noting that "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician," citing *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir. 1985), and "the opinion of a non-examining physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision," *Swindle v. Sullivant,* 914 F.2d 222, 226, n.3 (11th Cir. 1990).   Here, however, the opinions of the non-examining consultants were not "taken alone."  The ALJ reviewed all of the evidence, including Plaintiff's testimony and reports of activities, the treatment notes, lab results and objective testing detailed in the opinion, and the results of the consultative mental examination. While the Court agrees that the opinion of a

-10-

treating physician is generally entitled to more weight, the treating physicians here opined that Plaintiff could return to work. *See* R. 25-26, 28. The opinions of the nonexamining consultants are, therefore, "consistent with the overall conclusion that the claimant is not precluded from performing all work activity." (R. 27).

*Medication Side Effects*

Plaintiff's last contention is that the ALJ erred in failing to properly evaluate the side effects of her medications. The ALJ has a duty to elicit testimony and make findings regarding the effect of prescribed medications upon the ability to work. *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981). The Commissioner's Regulations require the ALJ to consider the side effects and effectiveness of medications. 20 C.F.R. § 404.1529(c)(3)(iv). Here, the ALJ did not make explicit findings as to this issue. Nonetheless, as explained below, the Court finds no reversible error in view of the ALJ's credibility finding with respect to Plaintiff's "symptoms" and Plaintiff's failure to provide objective evidence to support her allegations.

As noted by the ALJ (R. 25), Plaintiff testified that she has been diagnosed with RA and was taking Methotrexate for 8 months, which caused her to experience dizziness and sleepiness (R. 60-61). As discussed above, however, Plaintiff did not list this medication in any reports to the agency and the medical records do not show that she was ever diagnosed with this condition or prescribed this medication. The ALJ considered this discrepancy in the context of Plaintiff's credibility (R. 28), and her findings in that record are supported by substantial evidence.

The record does contain isolated references to side effects or reactions to other medications, but these instances are noted to be temporary. Plaintiff contends that medication Dr. Bryan gave her caused stomach upset (R. 286). The record shows, however, that Dr. Bryan immediately discontinued that medication, which she had taken for only two months (R. 286, 299), and there are no further complaints of side effects in his records (R. 288-301). Plaintiff cites to her February 2010 report to

-11-

Dr. Giroauard that a steroid injection had made her worse, and the doctor noted that Plaintiff did not improve and appeared to experience some side effects (R. 309). Plaintiff was not currently experiencing side effects at that time, however, and received no further injections. *Id.* There is no indication that these temporary reactions lasted for a significant period of time and Plaintiff fails to show how she could have experienced side effects from medication she is no longer taking. Finally, although Plaintiff reported to the Agency, in a September 2011 form, that her medications made her drowsy and caused "hot flashes" (R. 205, 215), there are no such complaints in the objective medical evidence (R. 282-511).  Thus, the medical evidence does not support a finding of disabling side effects during the relevant time period. "[I]f there is no evidence before the ALJ that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects." *Burgin v. Commissioner of Social Security*, 420 Fed.Appx. 901, 904 (11th Cir. 2011) (unpub.) (no error in failing to consider alleged side effects because no evidence represented claimant was experiencing side effects from his medications); *Turner v. Commissioner of Social Security*, 182 Fed.Appx. 946, 949 (11th Cir. 2006) (unpub.) ("the ALJ did not err in discrediting Turner's testimony regarding side-effects from her medications because the record includes no evidence that Turner consistently complained to her doctors of any side-effects."). No remand is warranted.

## Conclusion

Although it is evident that Plaintiff has challenges and difficulties on many fronts, the only issue before the Court is whether the decision by the Commissioner is adequately supported by the evidence and was made in accordance with proper legal standards.  For the reasons set forth above, the Court finds that to be the case.  As such, it is **respectfully recommended** that the administrative decision be **AFFIRMED.**  If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on August 28, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy